UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

MICHAEL LEE SMITH,

        Petitioner,

v.                                     Case No. 3:20-cv-170-MMH-MCR

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

        Respondents.

_____

### ORDER

### I. Status

Petitioner Michael Lee Smith, an inmate of the Florida penal system, initiated this action on February 20, 2020,[1] by filing a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (Petition; Doc. 1).[2] In the Petition, Smith challenges a 2013 state court (Duval County, Florida) judgment of conviction for armed burglary with assault and attempted armed robbery. He raises seven claims. See Petition at 5-21. Respondents have submitted a memorandum in opposition to the Petition. See Response (Doc. 6). They also submitted exhibits. See Docs. 6-1; 6-2. Smith filed a brief in reply. See Reply (Doc. 7). Smith's Petition is ripe for review.

---

[1] See Houston v. Lack, 487 U.S. 266, 276 (1988) (mailbox rule).
[2] For purposes of reference to pleadings and exhibits, the Court will cite the document page numbers assigned by the Court's electronic docketing system.

## II. Relevant Procedural History

On July 12, 2013, in Duval County case number 2012-CF-003863, the State of Florida charged Smith with armed burglary with assault or battery (count one), three counts of attempted armed robbery (counts two, three, and four), and possession of a firearm by a convicted felon (count five). Doc. 6-1 at 71-72. On July 19, 2013, at the conclusion of a trial, the jury found Smith guilty on count one with specific findings that he was armed with explosives or a dangerous weapon, he did not actually possess a firearm, and he committed an assault during the burglary; guilty on count two with a finding that he carried a deadly weapon (victim Robert Dodd); and guilty of aggravated assault (victims Rebecca Dodd and Courtney Barnes), the lesser-included offense of attempted armed robbery (counts three and four). Id. at 120-23, 973-74. Based upon the jury's finding that Smith did not possess a firearm, the court dismissed count five. Id. at 976-77. On August 20, 2013, the court sentenced Smith to a term of imprisonment of twenty years for count one, fifteen years for count two, five years for count three, and five years for count four, to run concurrently. Id. at 128-35, 290-91, 295.

On direct appeal, Smith, with the benefit of counsel, filed an initial brief, arguing that the trial court violated his due process rights at sentencing when it considered his prior bad acts that did not result in felony convictions (ground one), and further that his convictions for both burglary with assault while

armed and aggravated assault constitute double jeopardy (ground two). <u>Id.</u> at 985-1006. The State filed an answer brief, <u>id.</u> at 1008, and Smith filed a reply brief, <u>id.</u> at 1056. On January 20, 2015, the First District Court of Appeal (First DCA), in a written opinion, affirmed Smith's convictions and sentences as to counts one and two, and reversed and remanded as to counts three and four, stating in pertinent part:

> Appellant broke into a trailer brandishing a BB gun and demanded money from the three individuals inside: Robert Dodd, Rebecca Dodd, and Courtney Barnes. The victims did not have any money and Appellant left without further incident. Appellant was charged with "armed burglary with assault or battery" (count I), three counts of attempted armed robbery (counts II-IV), and possession of a firearm by a convicted felon (count V). The jury found Appellant guilty on count I, with specific findings that Appellant was armed with explosives or a dangerous weapon (but not a firearm) and that he committed an assault during the burglary; guilty on count II (Mr. Dodd); and guilty of the lesser included offense of aggravated assault on counts III and IV (Ms. Dodd and Ms. Barnes). Appellant was sentenced to concurrent prison terms of 20 years on count I, 15 years on count II, and 5 years on counts III and IV.

> Appellant argues in this direct appeal that his aggravated assault convictions (counts III and IV) violate the prohibition against double jeopardy because those offenses are subsumed within his conviction for armed burglary with an assault (count I). We agree. <u>See</u> <u>Green v. State</u>, 120 So.3d 1276, 1278 (Fla. 1st DCA 2013) ("[B]ecause all of the elements of the crime of aggravated assault with a firearm are contained within the crime of burglary with an assault while armed with a firearm, convictions for both the

> burglary and the aggravated assault violate the prohibition against double jeopardy."); <u>White v. State</u>, 753 So.2d 668, 669 (Fla. 1st DCA 2000) (same). Accordingly, we reverse and remand for the trial court to vacate Appellant's convictions for counts III and IV. <u>See</u> <u>Farrier v. State</u>, 145 So.3d 199, 200 (Fla. 5th DCA 2014) (in case involving two victims, vacating both convictions for aggravated assault with a firearm on double jeopardy grounds because those offenses were subsumed within the defendant's conviction of burglary with an assault or battery with a firearm); <u>but</u> <u>see</u> <u>Estremera v. State</u>, 107 So.3d 511, 512 (Fla. 5th DCA 2013) (in case involving three victims, vacating only one of the aggravated assault convictions as being subsumed within the defendant's conviction of burglary with an assault while armed). We affirm Appellant's convictions and sentences in all other respects.

<u>Smith v. State</u>, 154 So. 3d 523, 523-24 (Fla. 1st DCA 2015), <u>disapproved</u>, <u>Tambriz-Ramirez v. State</u>, 248 So. 3d 1087 (Fla. 2018); Doc. 6-1 at 1067-69 (footnotes omitted). The First DCA issued the mandate on February 5, 2015. Doc. 6-1 at 1070.[3]

On July 24, 2015, Smith filed a pro se motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850. <u>Id.</u> at 1086-1103. In his Rule 3.850 motion, Smith asserted that his trial counsel was ineffective because he failed to: move for a judgment of acquittal when the prosecution

---

[3] The circuit court vacated Smith's convictions and sentences as to counts three and four and directed the clerk to enter an amended judgment and sentence. Doc. 6-1 at 1072-73. The Amended Judgment and Sentence was entered on December 8, 2015, <u>nunc</u> <u>pro</u> <u>tunc</u> to August 20, 2013. <u>Id.</u> at 1075-81.

failed to meet its burden of disproving the affirmative defense of consent to enter the dwelling (ground one), id. at 1088; move for a judgment of acquittal when the prosecution failed to establish the elements required for a burglary conviction without the homeowner's testimony (ground two), id. at 1090; object when the prosecution failed to prove a licensed or invited entry (ground three), id. at 1092; move for a judgment of acquittal based on insufficient evidence to support the conviction for attempted armed robbery with a deadly weapon (ground four), id. at 1094; call available witnesses whose testimony was relevant to the defense (ground five), id. at 1096; and move for a mistrial at the close of the trial when the prosecution misled the jury and "transcended the bounds of relevancy" (ground six), id. at 1098. He also asserted that the cumulative effect of counsel's errors violated his Sixth and Fourteenth Amendment rights. Id. at 1101.

In February 2018, the postconviction court directed the State to respond to Smith's claims, as renumbered by the court.[4] Id. at 1118. The State

---

[4] The court renumbered the claims as follows because "some of the grounds address multiple issues." Doc. 6-1 at 1118 n.2. Counsel was ineffective because he failed to: argue in his motion for judgment of acquittal that the State failed to prove lack of invitation (ground one); call available witnesses and present evidence, specifically phone records, to support the defense of consent (ground two); argue in his motion for judgment of acquittal that the State did not establish the three elements required for a burglary conviction (ground three); object to a jury instruction containing the "remaining in" language (ground four); argue in his motion for judgment of acquittal that the State failed to prove intent (ground five); move for judgment of acquittal as to count two (attempted armed robbery) because no evidence was introduced that the BB gun was a deadly weapon (ground six); call available

responded, id. at 1120, and Smith filed a reply, Doc. 6-2 at 319. On August 22, 2018, the postconviction court denied Smith's request for postconviction relief. Docs. 6-1 at 1232; 6-2 at 1-16. On appeal, Smith filed a pro se brief, Doc. 6-2 at 329, and the State filed a notice that it did not intend to file an answer brief, id. at 356. The First DCA affirmed the court's denial of postconviction relief per curiam on June 13, 2019, id. at 360; denied Smith's motion for rehearing on August 2, 2019, id. at 364; and issued the mandate on August 23, 2019, id. at 362.

During the pendency of the Rule 3.850 proceedings, Smith filed a pro se petition for writ of habeas corpus on April 14, 2016. Id. at 377. In the petition, Smith asserted that appellate counsel was ineffective because she failed to argue on direct appeal that trial counsel was ineffective because he did not move for a judgment of acquittal when the prosecution failed to: disprove consent to enter the dwelling with respect to the burglary charge (ground one), id. at 381; prove the elements required for a burglary conviction (ground two), id. at 383; and prove "a licensed or invited entry as required by the burglary statute" when the information and jury instructions used "remaining in" verbiage (ground three), id. at 385. He also asserted that appellate counsel

---

witnesses (Christopher Rue, Stacy Tyus, Lonnie King, and Ronald Cope) (ground seven); and object and move for mistrial due to the admission of the 911 call recordings (ground eight). As ground nine, Smith asserted that the cumulative effect of counsel's errors warranted relief.

failed to raise on direct appeal that trial counsel was ineffective because he failed to move for a judgment of acquittal based on insufficient evidence to support a conviction for attempted armed robbery with a deadly weapon (ground four). Id. at 387. On May 11, 2016, the First DCA denied the petition "on the merits," id. at 522, and on June 17, 2016, denied Smith's motion for rehearing, id. at 524.

Also, during the pendency of the Rule 3.850 proceedings, Smith filed a pro se motion to correct illegal sentence pursuant to Florida Rule of Criminal Procedure 3.800(a) on October 23, 2017. Id. at 532. The court denied the Rule 3.800 motion on December 6, 2017. Id. at 538. On appeal, the First DCA affirmed the court's denial of the motion per curiam on May 2, 2018, id. at 543, and issued the mandate on May 30, 2018, id. at 545.

On December 6, 2019, Smith filed a pro se motion for reduction or modification of sentence pursuant to Rule 3.800(c). Id. at 548. The court denied the Rule 3.800 motion as untimely on January 8, 2020. Id. at 566.

### III. One-Year Limitations Period

This action was timely filed within the one-year limitations period. See 28 U.S.C. § 2244(d).

### IV. Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. See Chavez v. Sec'y, Fla.

Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007); Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318-19 (11th Cir. 2016). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Schriro, 550 U.S. at 474. The pertinent facts of this case are fully developed in the record before the Court. Because the Court can "adequately assess [Smith's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

## V. Governing Legal Principles

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas corpus. See Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011) (quotation marks omitted)). As such, federal habeas review of

final state court decisions is "'greatly circumscribed' and 'highly deferential.'"
Id. (quoting Hill v. Humphrey, 662 F.3d 1335, 1343 (11th Cir. 2011) (quotation
marks omitted)).

The first task of the federal habeas court is to identify the last state court
decision, if any, that adjudicated the claim on the merits. See Marshall v. Sec'y,
Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need
not issue a written opinion explaining its rationale in order for the state court's
decision to qualify as an adjudication on the merits. See Harrington v. Richter,
562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is
unaccompanied by an explanation, the United States Supreme Court has
instructed:

> [T]he federal court should "look through" the
> unexplained decision to the last related state-court
> decision that does provide a relevant rationale. It
> should then presume that the unexplained decision
> adopted the same reasoning.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018). The presumption may be
rebutted by showing that the higher state court's adjudication most likely
relied on different grounds than the lower state court's reasoned decision, such
as persuasive alternative grounds that were briefed or argued to the higher
court or obvious in the record it reviewed. Id. at 1192, 1196.

If the claim was "adjudicated on the merits" in state court, § 2254(d) bars
relitigation of the claim unless the state court's decision (1) "was contrary to,

or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Richter, 562 U.S. at 97-98. The Eleventh Circuit describes the limited scope of federal review pursuant to § 2254 as follows:

> First, § 2254(d)(1) provides for federal review for claims of state courts' erroneous legal conclusions. As explained by the Supreme Court in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000), § 2254(d)(1) consists of two distinct clauses: a "contrary to" clause and an "unreasonable application" clause. The "contrary to" clause allows for relief only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Id. at 413, 120 S. Ct. at 1523 (plurality opinion). The "unreasonable application" clause allows for relief only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id.
>
> Second, § 2254(d)(2) provides for federal review for claims of state courts' erroneous factual determinations. Section 2254(d)(2) allows federal courts to grant relief only if the state court's denial of the petitioner's claim "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has not yet defined § 2254(d)(2)'s "precise relationship" to § 2254(e)(1), which imposes a burden on the petitioner to rebut the

state court's factual findings "by clear and convincing evidence." See Burt v. Titlow, 571 U.S. ---, ---, 134 S. Ct. 10, 15, 187 L.Ed.2d 348 (2013); accord Brumfield v. Cain, 576 U.S. ---, ---, 135 S. Ct. 2269, 2282, 192 L.Ed.2d 356 (2015). Whatever that "precise relationship" may be, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'" Titlow, 571 U.S. at ---, 134 S. Ct. at 15 (quoting Wood v. Allen, 558 U.S. 290, 301, 130 S. Ct. 841, 849, 175 L.Ed.2d 738 (2010)).

Tharpe v. Warden, 834 F.3d 1323, 1337 (11th Cir. 2016); see Teasley v. Warden, Macon State Prison, 978 F.3d 1349, 1356 n.1 (11th Cir. 2020). Also, deferential review under § 2254(d) generally is limited to the record that was before the state court that adjudicated the claim on the merits. See Cullen v. Pinholster, 563 U.S. 170, 182 (2011) (stating the language in § 2254(d)(1) "requires an examination of the state-court decision at the time it was made").

Thus, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Burt v. Titlow, 134 S. Ct. 10, 16 (2013). "Federal courts may grant habeas relief only when a state court blundered in a manner so 'well understood and comprehended in existing law' and 'was so lacking in justification' that 'there is no possibility fairminded jurists could disagree.'" Tharpe, 834 F.3d at 1338 (quoting Richter, 562 U.S. at 102-03). This standard is "meant to be" a "difficult" one to meet. Richter, 562 U.S. at 102. A district court's obligation is "to train its attention" on the legal and factual basis for the state court's ruling, not to "flyspeck the

11

state court order or grade it." <u>Meders v. Warden, Ga. Diagnostic Prison</u>, 911
F.3d 1335, 1349 (11th Cir. 2019) (citing <u>Wilson</u>, 138 S. Ct. at 1191-92). Thus,
to the extent that a petitioner's claims were adjudicated on the merits in the
state courts, they must be evaluated under 28 U.S.C. § 2254(d).

## B. Ineffective Assistance of Trial Counsel

"The Sixth Amendment guarantees criminal defendants the effective
assistance of counsel. That right is denied when a defense attorney's
performance falls below an objective standard of reasonableness and thereby
prejudices the defense." <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5 (2003) (per
curiam) (citing <u>Wiggins v. Smith</u>, 539 U.S. 510, 521 (2003), and <u>Strickland v.
Washington</u>, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person
> challenging a conviction must show that "counsel's
> representation fell below an objective standard of
> reasonableness." [<u>Strickland</u>,] 466 U.S. at 688, 104 S.
> Ct. 2052. A court considering a claim of ineffective
> assistance must apply a "strong presumption" that
> counsel's representation was within the "wide range"
> of reasonable professional assistance. <u>Id.</u>, at 689, 104
> S. Ct. 2052. The challenger's burden is to show "that
> counsel made errors so serious that counsel was not
> functioning as the 'counsel' guaranteed the defendant
> by the Sixth Amendment." <u>Id.</u>, at 687, 104 S. Ct. 2052.
>
> With respect to prejudice, a challenger must
> demonstrate "a reasonable probability that, but for
> counsel's unprofessional errors, the result of the
> proceeding would have been different. A reasonable
> probability is a probability sufficient to undermine
> confidence in the outcome." <u>Id.</u>, at 694, 104 S. Ct. 2052.

> It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Id., at 693, 104 S. Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id., at 687, 104 S. Ct. 2052.

Richter, 562 U.S. at 104. The Eleventh Circuit has recognized "the absence of any iron-clad rule requiring a court to tackle one prong of the Strickland test before the other." Ward v. Hall, 592 F.3d 1144, 1163 (11th Cir. 2010). Since both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in Strickland: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697.

A state court's adjudication of an ineffectiveness claim is accorded great deference.

> "[T]he standard for judging counsel's representation is a most deferential one." Richter, 562 U.S. at ---, 131 S.Ct. at 788. But "[e]stablishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." Id. (citations and quotation marks omitted). "The question is not whether a federal court believes the state court's determination under the

> Strickland standard was incorrect but whether that
> determination was unreasonable — a substantially
> higher threshold." Knowles v. Mirzayance, 556 U.S.
> 111, 123, 129 S. Ct. 1411, 1420, 173 L.Ed.2d 251 (2009)
> (quotation marks omitted). If there is "any reasonable
> argument that counsel satisfied Strickland's
> deferential standard," then a federal court may not
> disturb a state-court decision denying the claim.
> Richter, 562 U.S. at ---, 131 S. Ct. at 788.

Hittson v. GDCP Warden, 759 F.3d 1210, 1248 (11th Cir. 2014); Knowles v.

Mirzayance, 556 U.S. 111, 123 (2009). In other words, "[i]n addition to the

deference to counsel's performance mandated by Strickland, the AEDPA adds

another layer of deference — this one to a state court's decision — when we are

considering whether to grant federal habeas relief from a state court's

decision." Rutherford v. Crosby, 385 F.3d 1300, 1309 (11th Cir. 2004). As such,

"[s]urmounting Strickland's high bar is never an easy task." Padilla v.

Kentucky, 559 U.S. 356, 371 (2010).

## VI. Findings of Fact and Conclusions of Law

### A. Grounds One and Two

As ground one, Smith asserts that counsel was ineffective because he

failed to move for a judgment of acquittal when the prosecution did not meet

its burden of disproving Smith's affirmative defense of consent. Petition at 5-

6. He maintains that he "did not commit a burglary" because Robert Dodd gave

him permission to enter the home. Id. at 5. According to Smith, "the evidence

fails to rebut Smith's claim that he had spoken to Dodd prior to entering and

that Dodd had given him permission." Id. at 6. As ground two, he states that counsel was ineffective because he failed to move for a judgment of acquittal when the prosecution did not establish the three elements required for a burglary conviction. Id. at 7-8.

Respondents argue that Smith did not properly exhaust a portion of ground two in the state courts, and therefore the claim is procedurally barred. Response at 32. Notably, although Smith filed a pro se brief on appeal, he was not required to file an appellate brief because the postconviction court summarily denied his Rule 3.850 motion without an evidentiary hearing. See Florida Rule of Appellate Procedure 9.141(b)(2)(C)(i); see Atwater v. Crosby, 451 F.3d 799, 809-10 (11th Cir. 2006) ("Pursuant to state procedural rules, abandonment of an issue results from submission of a brief without argument thereon in an appeal of an order denying relief after an evidentiary hearing."); see also Cortes v. Gladish, 216 F. App'x. 897, 899-900 (11th Cir. 2007) (recognizing that if the petitioner "received an evidentiary hearing, his failure to address issues in his appellate brief would constitute a waiver").[5] As such,

---

[5] The Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point. See McNamara v. GEICO, 30 F.4th 1055, 1060-61 (11th Cir. 2022); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

the Court finds that Smith sufficiently exhausted the ineffectiveness claims in the state courts.

Smith raised the ineffectiveness claims in his Rule 3.850 motion. Doc. 6-1 at 1088-91. The postconviction court denied the Rule 3.850 motion with respect to the claims, stating in pertinent part:

> Grounds One, Three, and Five are premised on counsel's alleged failure to sufficiently argue for judgment of acquittal. In Ground One, Defendant alleges counsel was ineffective for failing to argue that the State failed to prove lack of invitation. In Grounds Three and Five, Defendant alleges counsel was ineffective for failing to argue that the State did not establish the elements of burglary, i.e. ownership of the structure, intent to commit an offense, and unlawful entry or remaining in. Defendant avers that had counsel so argued, he would have been acquitted of Count One, Armed Burglary with Assault.

> "The purpose of a motion for judgment of acquittal is to challenge the legal sufficiency of the evidence." State v. Prehn, 566 So. 2d 1362, 1363 (Fla. 1st DCA 1990) (quoting Anderson v. State, 504 So. 2d 1270, 1271 (Fla. 1st DCA 1986)). In moving for a judgment of acquittal, the defendant "admit[s] the facts adduced in evidence and every conclusion favorable to the [State] which is fairly and reasonably inferable therefrom." Spinkellink v. State, 313 So. 2d 666, 670 (Fla. 1975). When a motion for judgment of acquittal is made, the trial court "must view the evidence and all reasonable inferences in the light most favorable to the state, the non-moving party." Werhan v. State, 673 So. 2d 550, 552 (Fla. 1st DCA 1996) (citing Behn v. State, 621 So. 2d 534, 535 (Fla. 1st DCA 1993)).

To establish the crime of Armed Burglary with Assault, the State had to prove at trial that Defendant unlawfully entered or remained in a structure, owned by or in the possession of the victim, Robert "Bobby" Dodd, with the intent to commit an offense therein, and while in the course of the burglary, was armed with a weapon or firearm and assaulted the victims, Bobby Dodd, Courtney Barnes, and/or Rebecca Dodd. Fla. Stat. § 810.02(1)(b), (2)(a)-(b) (2012). (Ex. F.)[6] In these grounds, Defendant alleges counsel was ineffective in arguing for judgment of acquittal with regard to the elements of ownership, intent, and entry.

a. Ownership.

"Ownership" for purposes of proving a burglary "means 'any possession which is rightful as against the burglar and is satisfied by proof of special or temporary ownership, possession, or control.'" D.S.S. v. State, 850 So. 2d 459, 461 (Fla. 2003) (quoting In re M.E., 370 So. 2d 795, 797 (Fla. 1979)).

Here, the State presented sufficient evidence to establish the ownership element. Throughout trial, the structure where the subject incident occurred, a trailer at 126 Pickettville Road, was referred to as Mr. Dodd's house. Three witnesses, including Defendant, provided testimony that Mr. Dodd lived at the said address on August 6, 2012, the date of the incident. (Ex. G at 258-60, 296-97, 309, 316, 394.)[7] Rebecca Dodd testified that she had lived there with Mr. Dodd, her brother, at some point, but not at the time of the incident. (Ex. G at 259.) Courtney Barnes testified she and her daughter were living in the trailer with Mr. Dodd when the incident occurred. (Ex. G at 316.) Viewing this testimony in a light most favorable to the State, the evidence at trial established Mr. Dodd was

---

[6] Doc. 6-2 at 42, Fifth Amended Information.
[7] Doc. 6-2 at 44, Transcript of the Trial Proceedings.

in possession of the trailer at 126 Pickettville Road for some period of time prior to, and on, August 6, 2012.

b. Intent.

"The law is clear that a trial court should rarely, if ever, grant a motion for judgment of acquittal on the issue of intent." Washington v. State, 737 So. 2d 1208, 1215 (Fla. 1st DCA 1999) (citation omitted). Whether one had intent is generally a question given to a jury, as reasonable persons may differ in determining intent when taking the surrounding circumstances into consideration. Id. at 1216; see Booker v. State, 397 So. 2d 910, 915 (Fla. 1981).

At trial, Ms. Barnes testified Defendant entered the trailer late in the evening without knocking and carried a gun. (Ex. G at 318-20.) She stated Defendant pointed the gun at Mr. Dodd, demanded drugs and money, and requested everyone to empty their pockets. (Ex. G at 323-26.) Defendant provided contradicting testimony regarding why he brought a weapon with him to Mr. Dodd's house. On direct examination, Defendant testified he went to Mr. Dodd's house to collect money he was owed and brought a BB gun for protection and fear. (Ex. G at 394-95, 397.) Later, on cross-examination, Defendant admitted he initially told an investigating detective that he went to Mr. Dodd's house to fight, to "beat him down" over the pills and money. (Ex. G. at 402.) Thus, there was sufficient evidence to present the issue of Defendant's intent to commit an offense to the jury.

c. Entry or remaining in and invitation.

Pertinent to the facts of this case, a "burglary" is committed when an individual enters a dwelling with the intent to commit an offense therein, unless the individual is licensed or invited to enter or remain. § 810.02(1)(b). "Notwithstanding a licensed or invited entry, remaining in a dwelling . . . [a]fter permission

18

to remain therein has been withdrawn . . ." also constitutes a burglary. § 810.02(1)(b)2.b. Pursuant to section 810.015(3), Florida Statutes (2012), consent is an affirmative defense to the crime of burglary. A defendant has the initial burden of establishing the existence of such a defense, but thereafter the burden shifts to the state to disprove the defense beyond a reasonable doubt. Dubois v. State, 43 Fla. L. Weekly D943b (Fla. 1st DCA Apr. 25, 2018) (citation omitted). "[L]ack of consent may be proven by circumstantial evidence." § 810.015(3); see Sparre v. State, 164 So. 3d 1183, 1200-01 (Fla. 2015) (reasoning defendant's invitation into victim's residence was effectively rescinded when defendant began stabbing victim); Sharpe v. State, 941 So. 2d 1190, 1191 (Fla. 4th DCA 2006) (approving trial court's reasoning that "even if appellant had consent for the initial entry, such consent was withdrawn once he committed the act of battery.").

Through Defendant's admission, it is clear he entered Mr. Dodd's trailer on the evening of August 6, 2012. (Ex. G at 397.) However, Defendant presented no evidence beside his own testimony that Mr. Dodd had invited him to enter. (Ex. G at 394.) Assuming this testimony is sufficient to meet Defendant's burden to establish a consent defense, the State produced sufficient evidence to disprove this defense beyond a reasonable doubt, i.e. any consent was implicitly withdrawn after Defendant displayed his weapon and overtly withdrawn when Rebecca Dodd told him to "get [] out." (Ex. G at 280.) The State also elicited testimony from Defendant that he did not think he continued to be a welcome guest in Mr. Dodd's house after he pointed his gun at Mr. Dodd. (Ex. G at 416.) Thus, taken in the light most favorable to the State, sufficient evidence was presented that Defendant remained in the trailer unlawfully as any consent to remain had been withdrawn.

d. Conclusion.

Defense counsel's failure to move for judgment of acquittal does not constitute ineffective assistance of counsel where the evidence presented by the State was sufficient, if believed by the jury, to establish the elements of the charged crime. See Rogers v. State, 567 So. 2d 483, 484 (Fla. 1st DCA 1990). Counsel cannot be deemed ineffective for failing to make a meritless argument. Teffeteller v. Dugger, 734 So. 2d 1009, 1023 (Fla. 1999). Because there is no reasonable probability that a judgment of acquittal would have been granted if counsel had argued differently, Defendant is not entitled to relief on Grounds One, Three, or Five.

Doc. 6-2 at 2-6 (emphasis deleted; footnotes omitted). On Smith's appeal, the

First DCA affirmed the postconviction court's denial of relief, id. at 360, and

later denied Smith's motion for rehearing, id. at 364.

To the extent that the appellate court decided Smith's claims on the

merits,[8] the Court will address the claims in accordance with the deferential

standard for federal court review of state court adjudications. After a review of

the record and the applicable law, the Court concludes that the state court's

adjudication of the claims was not contrary to clearly established federal law,

did not involve an unreasonable application of clearly established federal law,

and was not based on an unreasonable determination of the facts in light of the

---

[8] Throughout this order, in looking through the appellate court's per curiam affirmance to the circuit court's "relevant rationale," the Court presumes that the appellate court "adopted the same reasoning." Wilson, 138 S. Ct. at 1192.

evidence presented in the state court proceedings. Thus, Smith is not entitled to relief on the basis of the ineffectiveness claims.

Nevertheless, even if the appellate court's adjudication of the claims is not entitled to deference, Smith's ineffectiveness claims are still meritless. There is a strong presumption in favor of an attorney's competence when evaluating the performance prong of the Strickland ineffectiveness inquiry. See Anderson v. Sec'y, Fla. Dep't of Corr., 752 F.3d 881, 904 (11th Cir. 2014). The inquiry is "whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690. "[H]indsight is discounted by pegging adequacy to 'counsel's perspective at the time' . . . and by giving a 'heavy measure of deference to counsel's judgments.'" Rompilla v. Beard, 545 U.S. 374, 381 (2005). Thus, Smith must establish that no competent attorney would have taken the action that his counsel chose.

Notably, the test for ineffectiveness is neither whether counsel could have done more nor whether the best criminal defense attorneys might have done more; in retrospect, one may always identify shortcomings. Waters v. Thomas, 46 F.3d 1506, 1514 (11th Cir. 1995) (stating that "perfection is not the standard of effective assistance") (quotations omitted). Instead, the test is whether what counsel did was within the wide range of reasonable professional assistance. Ward, 592 F.3d at 1164 (quotations and citation omitted); Dingle v.

Sec'y for Dep't of Corr., 480 F.3d 1092, 1099 (11th Cir. 2007) ("The question is whether some reasonable lawyer at the trial could have acted as defense counsel acted in the trial at issue and not what 'most good lawyers' would have done.") (citation omitted).

On this record, Smith has failed to carry his burden of showing that his counsel's representation fell outside that range of reasonable professional assistance. Notably, defense counsel moved for a judgment of acquittal at the close of the State's case, Doc. 6-1 at 677-688, and then later renewed the motion, id. at 756-61. Counsel cannot be faulted for failure to make a meritless argument. See Pinkney v. Sec'y, DOC, 876 F.3d 1290, 1297 (11th Cir. 2017) ("[A]n attorney will not be held to have performed deficiently for failing to perform a futile act, one that would not have gotten his client any relief."). Even assuming arguendo deficient performance by defense counsel, Smith has not shown any resulting prejudice. Smith has not shown that a reasonable probability exists that the outcome of the case would have been different if counsel had acted as Smith asserts he should have. See Criner v. State, 943 So. 2d 224, 225 (Fla. 1st DCA 2006) ("A judgment of acquittal should only be granted when the jury cannot reasonably view the evidence in any manner favorable to the opposing party."). His ineffectiveness claim is without merit since he has shown neither deficient performance nor resulting prejudice.

Accordingly, Smith is not entitled to federal habeas relief on the ineffectiveness claims raised in grounds one and two.

## B. Ground Three

As ground three, Smith asserts that counsel was ineffective because he failed to object and/or inform the court that the "remaining in" language in the information and jury instructions was improper. Petition at 10. Respondents argue that Smith did not properly exhaust this ineffectiveness claim in the state courts, and therefore the claim is procedurally barred. Response at 39-42. For the reasons stated in Section VI.A., the Court finds that Smith sufficiently exhausted this ineffectiveness claim in the state courts. He raised the ineffectiveness claim in his Rule 3.850 motion. Doc. 6-1 at 1092-93. The postconviction court denied the Rule 3.850 motion with respect to the claim, stating in pertinent part:

> Defendant alleges counsel was ineffective for failing to inform the trial court that the "remaining in" language should have been removed from the information and jury instructions because the State did not prove an invited entry.
>
> As an initial matter, it must be pointed out that Defendant states an incorrect burden of proof. It is not the State's burden to prove a defendant had consent to enter a property; rather, to prove a burglary, the State has the burden to establish unlawful entry, i.e. entry without invitation or license. As discussed above, consent is an affirmative defense to burglary. § 810.015(3). A defendant has the initial burden of establishing a consent defense, but thereafter the

burden shifts to the state to disprove the defense beyond a reasonable doubt. <u>Dubois</u>, 43 Fla. L. Weekly D943b (citation omitted).[9] In other words, to establish a consent defense, a defendant must prove he entered the structure with the invitation of one in possession of the structure. If the defendant establishes he had consent for the initial entry, then the State must prove that the consent was subsequently withdrawn. <u>Id.</u> Accordingly, any of Defendant's allegations based on the State's failure to prove licensed or invited entry are meritless.

To the extent this ground could be construed as alleging ineffective assistance of counsel for failure to object to a defective information or jury instructions, this claim is also without merit. Defendant claims the "remaining in" language is "only applicable when there is consensual entry and the remaining in was done 'surreptitiously.'" (Def.'s Mot. 7.)[10]

For a short time prior to the enactment of section 810.015, the "remaining in" language in section 810.02 was interpreted to apply "only in situations where the remaining in was done surreptitiously." <u>Delgado v. State</u>, 776 So. 2d 233, 240 (Fla. 2000), <u>superseded by statute</u>, Ch. 2001-58, § 1, Laws of Fla. However, [s]hortly after the decision in <u>Delgado</u>, the Florida Legislature enacted legislation abrogating that decision, and clarifying that 'for a burglary to occur, it is not necessary for the licensed or invited person to remain in the dwelling, structure or conveyance surreptitiously." <u>Bradley v. State</u>, 33 So. 3d 664, 681 (Fla. 2010) (footnote omitted).

As to the information filed against Defendant, it sufficiently charged him with burglary as it followed section 810.02, Florida Statutes (2012), clearly charged each of the essential elements, and

---

[9] <u>Dubois v. State</u>, 247 So. 3d 34 (Fla. 1st DCA 2018).
[10] Doc. 6-1 at 1092.

sufficiently advised Defendant of the specific crime with which he was charged. <u>Price v. State</u>, 995 So. 2d 401, 404 (Fla. 2008); <u>see also</u> <u>Edwards v. State</u>, 128 So. 3d 134, 136 (Fla. 1st DCA 2013) (citation omitted) ("An information is fundamentally defective only where it totally omits an essential element of the crime or is so vague, indistinct or indefinite that the defendant is misled or exposed to double jeopardy.").

As to the jury instructions, the Court instructed the jury as follows:

As to Count I, to prove the crime of Armed Burglary with Assault, the State must first prove that a Burglary was committed beyond a reasonable doubt. "Burglary" is defined by the following three elements:

. . .

3. MICHAEL LEE SMITH was not invited to enter the structure, <u>or</u>

If you find that the Defendant was invited or had permission to enter [the] structure, that after entering the structure, Defendant remained inside the structure:

A. After permission to remain had been withdrawn and with the intent to commit an offense other than burglary inside the structure . . .

(Exs. G at 629-30, H.)[11]

Because it was disputed at trial whether Defendant did or did not have consent for the initial entry into Mr. Dodd's trailer, it was proper to instruct the jury on both uninvited entry and remaining in after permission had been withdrawn. Any objection made by counsel regarding the "remaining in"

---

[11] Doc. 6-2 at 276-77, 281.

> language in either the information or the jury
> instructions would have been meritless. Counsel
> cannot be deemed ineffective for failing to make a
> meritless objection. <u>Schoenwetter v. State</u>, 46 So. 3d
> 535, 546 (Fla. 2010). Thus, Defendant is not entitled to
> relief on Ground Four.

Doc. 6-2 at 8-10 (footnote omitted). The First DCA affirmed the postconviction

court's denial of relief and later denied Smith's motion for rehearing.

To the extent that the appellate court decided Smith's claim on the

merits, the Court will address the claim in accordance with the deferential

standard for federal court review of state court adjudications. After a review of

the record and the applicable law, the Court concludes that the state court's

adjudication of the claim was not contrary to clearly established federal law,

did not involve an unreasonable application of clearly established federal law,

and was not based on an unreasonable determination of the facts in light of the

evidence presented in the state court proceedings. Thus, Smith is not entitled

to relief on the basis of the ineffectiveness claim.

Nevertheless, even if the appellate court's adjudication of the claim is

not entitled to deference, Smith's ineffectiveness claim is without merit

because the record supports the postconviction court's conclusion. On this

record, Smith has failed to carry his burden of showing that his counsel's

representation fell outside that range of reasonable professional assistance. As

the postconviction court recognized, counsel cannot be deemed ineffective for

failure to make a meritless argument. See Schoenwetter v. State, 46 So. 3d 535, 546 (Fla. 2010). Even assuming arguendo deficient performance by defense counsel, Smith has not shown any resulting prejudice. He has not shown that a reasonable probability exists that the outcome of the case would have been different if counsel had acted as Smith asserts he should have. His ineffectiveness claim is without merit since he has shown neither deficient performance nor resulting prejudice. Accordingly, Smith is not entitled to federal habeas relief on the ineffectiveness claims raised in ground three.

## C. Ground Four

As ground four, Smith asserts that counsel was ineffective because he failed to move for a judgment of acquittal when the evidence was insufficient to support a conviction for attempted armed robbery with a deadly weapon (count two). Petition at 12-13. He raised this ineffectiveness claim in his Rule 3.850 motion. Doc. 6-1 at 1094-95. The postconviction court denied the Rule 3.850 motion with respect to the claim, stating in pertinent part:

> Defendant alleges counsel was ineffective for failing to move for judgment of acquittal as to Count Two, Attempted Armed Robbery, where no evidence was introduced that the BB gun Defendant claims he used was a "deadly weapon."
>
> As set forth above, "[t]he purpose of a motion for judgment of acquittal is to challenge the legal sufficiency of the evidence." Prehn, 566 So. 2d at 1363 (citation omitted). "[C]ourts should not grant a motion for judgment of acquittal unless the evidence is such

27

that no view which the jury may lawfully take of it favorable to the opposite party can be sustained under the law." Lynch v. State, 293 So. 2d 44, 45 (Fla. 1974). Thus, conflicting evidence "does not justify a judgment of acquittal because any conflicts in the evidence must be viewed in a light most favorable to the state." Brown v. State, 243 So. 3d 1037, 1040 (Fla. 1st DCA 2018).

Here, conflicting evidence was presented at trial regarding the type of gun Defendant brandished during the robbery. Defendant introduced a BB gun he claimed was the weapon he used. (Ex. G at 395.) He testified the BB gun was not capable of actually firing BBs because his son had broken it. (Ex. G at 396.) Rebecca Dodd testified the gun Defendant brandished "looked like a black handgun . . . kind of like the ones the cops carry." (Ex. G at 266.) Later, when shown the BB gun, Ms. Dodd testified it looked similar in size and color to the gun she observed Defendant pointing, but she did not recall seeing any gray on it. (Ex. G at 444-45.) She testified she was not sure the BB gun introduced into evidence was the same gun used in the robbery. (Ex. G at 445.) Courtney Barnes testified the gun Defendant brandished "was a small handgun. Could have been a 9 millimeter." (Ex. G at 324.) When shown the BB gun, Ms. Barnes did not recognize it and stated she was "pretty sure . . . the gun he had was completely black." (Ex. G at 447.) She also testified the gun used during the incident was not "messed up" like the BB gun introduced at trial. (Ex. G at 447.) Thus, in the light most favorable to the State, the evidence tends to show the BB gun was not the same gun used during the robbery.

Moreover, the issue of whether a BB or pellet gun is a deadly weapon is a factual question to be answered by the jury. Dale v. State, 703 So. 2d 1045, 1047 (Fla. 1997). In order to prove a BB gun is a deadly weapon, the State must prove that it was "'used or threatened to be used in a way likely to produce death

28

or great bodily harm.'" Winbush v. State, 174 So. 3d 1088, 1089 (Fla. 1st DCA 2015) (citing Fla. Std. Jury Instr. (Crim.) 15.2.). "A jury can conclude that a weapon is . . . deadly if it is implied by the defendant's words or actions." Gartner v. State, 118 So. 3d 273, 277 (Fla. 5th DCA 2013) (concluding victim's testimony that defendant showed her butt of gun during robbery was sufficient evidence for issue of whether BB gun was a deadly weapon to reach jury); see Swanson v. State, 98 So. 3d 135 (Fla. 1st DCA 2012) (citing Mitchell v. State, 698 So. 2d 555 (Fla. 2d DCA 1997) (evidence that defendant handled a BB gun, which look like a .22 caliber semi-automatic pistol, as if it was loaded and operable was sufficient to sustain convictions for robbery and aggravated assault with a deadly weapon even though BB gun was not loaded); C.W. v. State, 205 So. 3d 843, 845 (Fla. 2d 2016 (explaining that whether BB gun was a deadly weapon was a jury question when there was evidence that defendant used gun in threatening manner even though State presented no evidence that BB gun was loaded and capable of causing great bodily harm).

At trial, the State presented two victims who testified as to the threatening manner in which Defendant used his gun. Rebecca Dodd stated that Defendant pointed a gun at Mr. Dodd in close range while demanding drugs and money. (Ex. G at 265-66.) Courtney Barnes testified the gunman pointed a gun at Mr. Dodd as soon as he came into the room, and continued to point the gun while demanding drugs, money, and for everyone to empty their pockets. (Ex. G at 323-28.) Thus, Defendant's threatening actions and words implied that the gun he was brandishing was deadly.

Accordingly, had counsel moved for judgment of acquittal due to the lack of evidence that the BB gun was a "deadly weapon," the Court would not have granted same because: (1) there was conflicting evidence regarding whether the BB gun was even the

same gun used during the robbery; and (2) even if no testimony had been presented at trial to contradict Defendant's evidence that the weapon he brandished was a BB gun, the issue of whether the BB gun was a deadly weapon was still a factual question to be answered by the jury. Counsel cannot be deemed ineffective for failing to make a meritless argument. Teffeteller, 734 So. 2d at 1023. Defendant is not entitled to relief on this ground.

Doc. 6-2 at 10-12. The First DCA affirmed the postconviction court's denial of relief and later denied Smith's motion for rehearing.

To the extent that the appellate court decided Smith's claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of the claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Smith is not entitled to relief on the basis of the ineffectiveness claim.

Nevertheless, even if the appellate court's adjudication of the claim is not entitled to deference, Smith's ineffectiveness claim is without merit because the record supports the postconviction court's conclusion. On this record, Smith has failed to carry his burden of showing that his counsel's representation fell outside that range of reasonable professional assistance.

30

Even assuming arguendo deficient performance by defense counsel, Smith has not shown any resulting prejudice. He has not shown that a reasonable probability exists that the outcome of the case would have been different if counsel had acted as Smith claims he should have. His ineffectiveness claim is without merit since he has shown neither deficient performance nor resulting prejudice. Accordingly, Smith is not entitled to federal habeas relief on the ineffectiveness claim raised in ground four.

### D. Ground Five

As ground five, Smith asserts that counsel was ineffective because he failed to subpoena phone records and call Christopher Rue, Stacy Tyus, Lonnie King, and Ronald Cope, who were available to provide testimony that was relevant to Smith's consent defense. Petition at 15-16. According to Smith, the testimony of these witnesses would have corroborated his own testimony at trial as well as "counsel's strategy and line of defense." Id. at 16. Respondents argue that Smith did not properly exhaust a portion of ground five (related to the phone records) in the state courts, and therefore the claim is procedurally barred. Response at 54. For the reasons set forth in Section VI.A., the Court finds that Smith sufficiently exhausted the ineffectiveness claims in the state courts.

Smith raised the ineffectiveness claims in his Rule 3.850 motion. Doc. 6-1 at 1096-97. The postconviction court denied the Rule 3.850 motion with respect to the claims, stating in pertinent part:

> In Ground Two, Defendant alleges counsel was ineffective for failing to call available witnesses and present evidence, specifically phone records, which he alleges would have supported his consent defense. In Ground Seven, Defendant lists the available witnesses as: Christopher Rue, Stacy Tyus, Lonnie King, and Ronald Cope.

> Defendant claims that Rue and Tyus would have provided testimony tending to show Defendant had a previous dealing with Mr. Dodd, and Tyus and Cope heard Mr. Dodd tell Defendant to come over. Defendant claims the phone records would have shown Defendant had contact with Mr. Dodd just prior to the incident. As discussed above, even if Defendant had consent to initially enter Mr. Dodd's trailer, such consent was withdrawn once he committed the act of armed burglary with an assault. § 810.015. Thus, Defendant has not shown that he was prejudiced by the absence of these witnesses or phone record evidence. Sharpe v. State, 941 So. 2d 1190, 1191 (Fla. 4th 2006) (citing Strickland v. Washington, 466 U.S. 668 (1984)).

> As to King, Defendant alleges he would have testified that he went with Defendant into Mr. Dodd's trailer, they were confronted by a female who asked what they wanted, and that Defendant "pointed a gun towards Dodd and the females asking, where's my money, Where's my pills?" (Def.'s Mot. 11-12.) King's testimony would not have been beneficial to Defendant as it confirms Defendant committed an assault once inside the trailer. It is unlikely that the trial would have resulted more favorably for Defendant had King been called to testify given that it helped to

> corroborate the State's case. Counsel's performance cannot be deemed deficient for failing to call a witness who could potentially provide damaging testimony. <u>Deparvine v. State</u>, 146 So. 3d 1071, 1084 (Fla. 2014).
>
> For the foregoing reasons, Defendant is not entitled to relief on Grounds Two or Seven.

Doc. 6-2 at 6–7. The First DCA affirmed the postconviction court's denial of relief and later denied Smith's motion for rehearing.

To the extent that the appellate court decided Smith's claims on the merits, the Court will address the claims in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of the claims was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Smith is not entitled to relief on the basis of these ineffectiveness claims.

Nevertheless, even if the appellate court's adjudication of the claims is not entitled to deference, Smith's ineffectiveness claims are without merit because the record supports the postconviction court's conclusion. On this record, Smith has failed to carry his burden of showing that his counsel's representation fell outside that range of reasonable professional assistance. Even assuming arguendo deficient performance by defense counsel, Smith has

not shown any resulting prejudice. At trial, Smith explained to the jury why he went to Dodd's trailer that night. He testified that he was there to "collect money" owed to him, and that Dodd had told him to "come get [his] sh-t." Doc. 6-1 at 698. He has not shown that a reasonable probability exists that the outcome of the case would have been different if counsel had subpoenaed the phone records and called Rue, Tyus, King, and Cope, as witnesses. His ineffectiveness claims are without merit since he has shown neither deficient performance nor resulting prejudice. Accordingly, Smith is not entitled to federal habeas relief on the ineffectiveness claims raised in ground five.

### E. Ground Six

As ground six, Smith asserts that counsel was ineffective because he failed to object and move for a mistrial when the prosecution misled the jury. Petition at 18-19. According to Smith, the admission of the 911 call recordings was prejudicial, "portrayed a distorted picture" of what had transpired that night, and "bolstered the prosecution." Id. at 19. Respondents again argue that Smith did not properly exhaust the ineffectiveness claim in the state courts, and that the claim is procedurally barred. Response at 59-60. For the reasons previously-stated in Section VI.A., the Court finds that Smith sufficiently exhausted the ineffectiveness claim in the state courts.

Smith raised the ineffectiveness claim in his Rule 3.850 motion. Doc. 6-1 at 1099-1100. The postconviction court denied the Rule 3.850 motion with respect to the claim, stating in pertinent part:

> Defendant claims counsel was ineffective for failing to object and move for a mistrial due to the admission of 911 call recordings. Defendant states that the recordings "portrayed a distorted picture" and resulted in the jury finding Defendant guilty of burglary instead of a lesser-included offense. (Def.'s Mot. 14.) Defendant asserts the recordings should have been excluded pursuant to Florida Rule of Evidence 90.403.
>
> Where a defendant alleges counsel was ineffective for failing to move for a mistrial, the defendant must show that the motion for mistrial would have been granted in order to satisfy the prejudice prong of Strickland. Middleton v. State, 41 So. 3d 357, 360 (Fla. 1st DCA 2010). "A motion for mistrial should be granted only when the error is deemed so prejudicial that it vitiates the entire trial, depriving the defendant of a fair proceeding." Floyd v. State, 913 So. 2d 564, 576 (Fla. 2005) (citation omitted).
>
> Evidence is admissible if it is relevant, i.e. tending to prove or disapprove a material fact. Fla. Stat. §§ 90.401-402 (2012). Although relevant evidence may be excluded when its probative weight is substantially outweighed by the danger of unfair prejudice, this rule does not bar evidence that is simply prejudicial or damaging to the defense. See Fla. Stat. § 90.403 (2012); Wuornos v. State, 644 So. 2d 1000, 1007 (Fla. 1994). "The real question is whether that prejudice is so unfair that it should be deemed unlawful." Wuornos, 644 So.2d at 1007.

To establish the crime of Armed Burglary with Assault, the State had to prove at trial that Defendant unlawfully entered or remained in a structure, owned by or in the possession of Mr. Dodd, with the intent to commit an offense therein, and while in the course of the burglary, was armed with a weapon or firearm and assaulted the victims. Fla. Stat. § 810.02 (2012). To establish the crime of Attempted Armed Robbery, the State had to prove that Defendant, through violence or putting in fear, attempted to take money or property from the victims, and was armed with a weapon or firearm. Fla. Stat. § 812.13 (2012). The 911 call recordings tended to establish that Defendant remained in Mr. Dodd's house after any invitation had been withdrawn, brandished a gun, put the victims in fear, and demanded money and drugs. (Ex. G at 279-94.) The recordings also tended to show that Defendant used or threatened to use the gun he brandished "in a way likely to produce death or great bodily harm," which is relevant to the jury's determination of whether the gun was a "deadly weapon." See Winbush v. State, 174 So. 3d at 1089 (citation omitted). Thus, the 911 recordings were relevant as they tended to prove material facts at issue. See §§ 90.401-402.

Additionally, the 911 recordings were not overly prejudicial as the record shows the defense, in fact, relied on them to support its case. During opening statements, defense counsel suggested to the jury that the 911 recordings would not portray the victims' fear as posited by the State, but would rather show a person just speaking to dispatch. (Ex. G at 254.)[12] On cross-examination, Defendant referred to the commotion that can be heard on the recording in support of his defense that he lacked the intent necessary to support a burglary conviction, stating, "I didn't mean to do all this." (Ex. G at 403.) During

_____

[12] Doc. 6-1 at 558 ("I believe that you will hear not sheer fear but a person speaking to dispatch.").

closing argument, counsel argued the recordings corroborated Defendant's version of events in that they showed Mr. Dodd recognized Defendant, recalled being at his house the day before, and that the incident arose over a pill transaction. (Ex. G at 570, 572.)[13] Counsel further referred to Ms. Dodd and Ms. Barnes' conversation captured on the recording in order to question Ms. Barnes' credibility regarding Defendant's use of the gun. (Ex. G at 578-79.) Significantly, counsel also argued the recordings established Defendant voluntarily renounced his criminal intent, which, if accepted by the jury, would preclude an attempted armed robbery conviction. (Ex. G at 570-72).

Accordingly, the 911 call recordings were: (1) relevant to facts at issue; and (2) not overly prejudicial in that portions of the recordings actually provided support for Defendant's case. Therefore, the basis for a mistrial, as alleged by Defendant, did not exist and counsel's performance was not deficient for failing to object and move for a mistrial. Ground Eight is denied.

Doc. 6-2 at 12-14. The First DCA affirmed the postconviction court's denial of relief and later denied Smith's motion for rehearing.

To the extent that the appellate court decided Smith's claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of the claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law,

---

[13] Doc. 6-1 at 876-78.

and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Smith is not entitled to relief on the basis of the ineffectiveness claim.

Nevertheless, even if the appellate court's adjudication of the claim is not entitled to deference, Smith's ineffectiveness claim is without merit because the record supports the postconviction court's conclusion. On this record, Smith has failed to carry his burden of showing that his counsel's representation fell outside that range of reasonable professional assistance. Even assuming arguendo deficient performance by defense counsel, Smith has not shown any resulting prejudice. He has not shown that a reasonable probability exists that the outcome of the case would have been different if counsel had acted as Smith claims he should have. His ineffectiveness claim is without merit since he has shown neither deficient performance nor resulting prejudice. Accordingly, Smith is not entitled to federal habeas relief on the ineffectiveness claim raised in ground six.

## F. Ground Seven

As ground seven, Smith asserts that the cumulative effect of counsel's errors as he describes in grounds one through six deprived him of a fair trial. Petition at 20-21. Respondents argue that Smith did not properly exhaust the cumulative error claim, Response at 62-64, but as with Smith's other claims, the Court finds that Smith did sufficiently exhaust the claim in the state

courts. He raised the claim in his Rule 3.850 motion, see Doc. 6-1 at 1101-02, and the postconviction court denied the Rule 3.850 motion with respect to the claim, stating in pertinent part:

> Defendant asserts the aggregate effect of counsel's deficiencies warrants relief. However, "[c]laims of cumulative error do not warrant relief where each individual claim of error is 'either meritless, procedurally barred, or [does] not meet the Strickland standard for ineffective assistance of counsel.'" Schoenwetter, 46 So. 3d at 562 (quoting Israel v. State, 985 So. 2d 510, 520 (Fla. 2008)). Having found that Defendant's individual claims are either meritless or do not meet the Strickland standard of ineffective assistance of counsel, Defendant is not entitled to relief and Ground Nine is denied.

Doc. 6-2 at 15. The First DCA affirmed the postconviction court's denial of relief and later denied Smith's motion for rehearing.

To the extent that the appellate court decided Smith's claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of the claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Smith is not entitled to relief on the basis of the cumulative error claim.

Nevertheless, even if the appellate court's adjudication of the claim is not entitled to deference, Smith's claim is without merit because the record fully supports the postconviction court's conclusion. Where all individual claims are meritless, the claim of cumulative error is also without merit. Morris v. Sec'y, Dep't of Corr., 677 F.3d 1117, 1132 (11th Cir. 2012); Lundberg v. Sec'y, Fla. Dep't of Corr., 808 F. App'x 725, 738 (11th Cir. 2020). As explained in greater detail above, each of Smith's ineffectiveness claims is meritless. Thus, his assertion of cumulative error is likewise without merit. Accordingly, Smith is not entitled to federal habeas relief on his claim in ground seven.

## VII. Certificate of Appealability
## Pursuant to 28 U.S.C. § 2253(c)(1)

If Smith seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. The Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Smith "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were

'adequate to deserve encouragement to proceed further,'" Miller-El, 537 U.S. at 335-36 (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, the Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED**:

1.     The Petition (Doc. 1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.     The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.     If Smith appeals the denial of the Petition, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending

41

motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

    4.    The Clerk of the Court is directed to close this case and terminate any pending motions.

    **DONE AND ORDERED** at Jacksonville, Florida, this 14th day of November, 2022.

*Marcia Morales Howard*

**MARCIA MORALES HOWARD**
United States District Judge

Jax-1 11/7
c:
Michael Lee Smith, FDOC #120814
Counsel of Record